## THE PEOPLE *vs.* STEARNS.

An indictment for *forgery* is good, if in it be set forth *the instrument* or *writing* alleged to have been forged, averring it to have been *falsely made* with the *intent to injure or defraud* some person or body corporate, provided the instrument be such *as on its face* to show that the rights or property of such person or body corporate *may* thereby be injured or affected ; it is not necessary that the *facts* and *circumstances* of the case showing the *intent,* should be specially set forth in the indictment ; it is enough that they be given in evidence on the trial.

*It was accordingly held in this case,* in which the defendant was indicted for forging an instrument purporting to be a request from the cashier of a bank in Kentucky to the cashier of a bank in New York to deliver to *engravers* the *plates* of the bank for the purpose of having new impressions taken, that it was not necessary to allege *either* that there was such a bank in Kentucky, *or* that the person who purported to be the writer of the request was cashier thereof and had authority to make such request, *or* that there were such plates in existence and in the possession or under the control of the cashier to whom the writing was addressed : all this being *matter of evidence* and not necessary to be set forth in the indictment. *Extrinsic facts* are necessary to be stated only when the operation of the instrument upon the rights or property of another is not *manifest* or *probable* from the face of the writing.

*It was further held,* that it was not necessary to aver in the indictment that the Bank of Kentucky was a *corporation* duly created ; that it was enough to allege that the instrument set forth was falsely made, with the intent to injure and defraud the bank ; and that under such allegation an exemplification of the act of incorporation was admissible in evidence.

The case of *The People* v. *Wright,* 9 Wendell, 103, examined and commented upon.

FORGERY. The prisoner Stearns was indicted for *forging* an order in these words : " To the cashier of the Union Bank—Sir, please deliver to Messrs. Burton, Gurley & Edmonds the plates of our bank, and receive them again on deposit, and oblige your obed't serv't, G. C. Gwathmay, Cashier—[Dated] Bank of Kentucky, Louisville, December 20, 1837"—with intent to injure and defraud *The President, Directors and Company of the Bank of Kentucky,* and *divers other persons* to the jurors aforesaid unknown against the form of the statute, &c. There was a second count charging the prisoner with *uttering* and pub-

lishing the same order with intent to injure and defraud, &c. as in first count.   The prisoner *demurred* to the indictment, and assigned as cause of demurrer, *that it was not averred* in the indictment, that there was such a body corporate, or otherwise, in existence, as The President, Directors, and Company of the Bank of Kentucky; that such body carried on the business of banking, or were possessed of or had any interest in *any plates*, as specified in the indictment; that G. C. Gwathmay had authority to make such order, and that if it had been genuine it would have been a legal and valid instrument for the purpose therein intended; and that the cashier of the Union Bank had the possession of or control over *the plates* which he was requested to deliver to Messrs. Burton, &c.   The court of general sessions of New York overruled the demurrer, and gave judgment that the prisoner answer over, which he refusing to do, the court directed the plea of *not guilty* to be entered for him.   On the trial of the case it was proved that the order set forth in the indictment was *forged* by the procurement of the prisoner, and enclosed in an envelope to Messrs. Burton, Gurley & Edmonds, *engravers* in the city of New York, the successors of a firm who originally engraved the plates for the bills of the Bank of Kentucky, and was received by Messrs. Burton & Gurley—the other member of the firm (Edmonds) having retired from the concern; in which envelope (also purporting to be signed by G. C. Gwathmay, cashier,) they were desired to send 500 impressions from each of the plates of the bank except those of certain denominations. In the preceding year, Burton, Gurley & Edmonds had printed bills for the same bank.   The order was presented by Mr. Gurley to the cashier of the Union Bank, and the plates delivered to him, and a large amount of impressions taken or bills struck of the denomination of 5, 10, 20, 50, 100 dollars, and of a *post note* in blank.   The fraud of the prisoner was discovered so as to prevent the delivery of the impressions to him.   The cashier of the Union Bank, called as a witness on the part of the prosecution, testified on his cross-examination, *that it was well understood that the plates* of the Bank of Kentucky were left at the Union Bank for safe

keeping ; that he as cashier of the Union Bank had no power or authority over deposits made in that bank for safe keeping, other than what was derived from his office as cashier; that he did not consider himself *individually* responsible for the plates, or that any action would lie against him for refusing to obey a genuine order of the character of the one in question. The district attorney offered in evidence an exemplification of an act of the legislature of the state of Kentucky incorporating the *Bank of Kentucky*, by the name of "The President," &c. as set forth in the indictment; which evidence was objected to by the counsel for the prisoner, on the ground that there was no averment in the indictment of the incorporation of such bank; but the objection was overruled and the proof received. The evidence being closed, the jury were charged by the recorder, and the prisoner found guilty. The counsel for the prisoner having excepted to various decisions made in the progress of the trial, procured a bill of exceptions to be sealed, which, together with the indictment and demurrer, were brought here for the advice of this court. The case was argued here by

*A. Nash & N. Hill, jun.* for the prisoner.

*J. R. Whiting*, (district attorney of New York,) for the people.

*By the Court,* COWEN, J. The objections taken at the bar are reducible to the following : 1. That the indictment is defective, inasmuch as it does not aver that the object of the prisoner was to defraud any natural person by name, or any body corporate ; 2. That it avers no such connection between Ebbetts, the cashier of the Union Bank, and the plates, as to show that any order on him could operate to the prejudice of the bank ; nor that Gwathmay, the pretended drawer of the order, had any legal right to control them ; and for want of these averments, the instrument not being valid on its face, does not appear to be the subject of forgery ; 3. That the case was not made out at the trial, in-

asmuch as it appeared that Ebbets, the cashier of the Union Bank, in truth had no control over the plates ; 4. That although the indictment charged that the intent was to defraud a company not set forth as incorporated, yet proof was received of its being a corporate body, and this was a variance ; 5. That the president, directors and company of the Bank of Kentucky were not shown by the indictment to have been a corporate or natural person, having any interest in or control over the plates, which were the subject of the order ; and yet the proof of their being a corporation was received.

That class of objections which complain that the averments in the indictment do not show such an instrument as, if genuine, would be valid, and, therefore, the subject of forgery, involves the inquiry whether the order was apparently available to transfer the plates of the Bank of Kentucky from the custody of their depositary to the hands of another. If so, the case is brought literally within the statute, 2 R. S. 560, 561, § 33, subd. 2, without the aid of extrinsic matter. The statute declares that the counterfeiting, with intent to injure or defraud, of any instrument or writing, being, or *purporting to be* the act of another, by which any rights or property whatever shall be, or *purport to be* in any manner affected, by which any person *may be affected*, or *in any way injured* in his person or property, shall be forgery in the third degree. The fraudulent uttering of such an instrument subjects the offender to the same degree of punishment as its actual forgery. Id. 562, § 39. It seems difficult for a reader to mistake the apparent import of the instrument in question. It purported to be an order from an officer representing the Bank of Kentucky, duly empowered to make it, which order was directed to another, purporting to be the depositary, and desiring him to deliver the plates of the bank. The objection is, that neither any interest in, nor control of the bank over the plates, nor any power in their cashier over them, nor the custody nor control of the pretended drawee, is shown by independent averments. The objection implies that the indictment and proof must show such a state of things existing in fact, that the order, if

genuine would necessarily or probably work a change in the custody of the goods. It is answered that the instrument counterfeited *might*, as appears from its own language, have had the effect to defraud; and it was, therefore, sufficient to set it out, averring generally the intent to defraud; but omitting all extrinsic circumstances.

There is hardly any question in criminal pleading so metaphysical as that we are now considering, or which has presented greater difficulties to the judicial mind. In its general compass it spreads over the whole region of fraudulent device in the fabrication of forged paper, diversified almost to infinitude, as it may be, by the studious adaptations of depraved ingenuity. It calls upon courts to inquire when the paper presented is so obviously fitted to its end as to warrant a direct imputation of fraud. When shall its purpose be said at once to strike the mind? This has been much considered by the courts both in ancient and modern times; and I need not stop now to show, what will appear in the sequel, that the cases are not uniform in their tendency to sustain this indictment; though their examination has relieved me from all doubt that the decided balance of British authority, at least, is with it.

It cannot now be a serious question that the fabrication of the instrument before us was a criminal forgery. Whatever doubt might have existed at common law, whether it were to be deemed a mere false token coming in as the ingredient of a criminal cheat, or a fraudulent forgery which was in itself a crime, (vide 2 Russ. on Crimes, Phila. ed. of 1836, pp. 290 to 292, and 329 to 333, and the cases there cited,) all difficulty is removed by the statute. Every instrument in writing which may affect property: for example, an order, a letter, or a mere license, is made the subject of a felonious forgery. The question is, therefore, one of pleading. The indictment must show the forgery of an instrument which, on being described, appears on its face naturally calculated to work some effect on property, or, if it be not complete for that purpose, some extrinsic matter must be shown whereby the court may judicially see its tendency. As an instance of the latter, suppose a man has the custody of property

which he agrees to deliver, on the owner sending him certain words under his hand which have no respect to property ; but which are a secret sign agreed upon between them and known only to them. Such words would be the subject of forgery within the statute ; but not being significant and it not being conceivable how mischief would ensue from their use, the custody of the goods and the agreement on the words must be shown in the indictment. But suppose a letter by which the writer requests another to deliver " my purse of gold, or my package of bank bills," to A. B : are not the court capable of seeing at once how the forgery of such an instrument may work a fraud ; and hence would not the allegation that the letter was counterfeited, with the usual general averment that the act was with intent to defraud, be sufficient ? The nature of an instrument which may intrinsically present a case of forgery was, to a considerable extent, and it struck me at first sufficiently, illustrated for all the purposes of the present inquiry by the citations of Mr. Justice *Bronson* in the late case of *The People* v. *Galloway*, 17 Wendell, 542. But as the inquiry is not without difficulty, and the nature of the fabricated paper must determine whether the indictment shall notice foreign facts, the examination of other cases may be material.

A writing void on its face, (for instance an unattested will of land, or a *nude pact*,) is a familiar instance of paper in respect to which forgery cannot be predicated without the averment of some extrinsic circumstances showing how it may become pernicious. *Vide People* v. *Shall*, 9 Cowen, 778, and the cases there cited ; *State* v. *Smith*, 8 Yerg. 150 ; *Price* v. *The State*, 1 id. 432 . *State* v. *Bourden*, 2 Dev. 443 ; *State* v. *Greenlee*, 1 id. 543 ; *State* v. *Dalton*, 2 Murph. 379 ; *Rex* v. *Wilcox*, Russ. & Ry. Cr. Cas. 50. This is on the presumption that every man knows the law, and is able to appreciate the legal effect of the instrument. Therefore, it cannot, in legal contemplation, defraud any one. The settled common law rule is stated by Mr. Hammond, in his Digest of the Law of Forgery, ch. 1, § 2, pl. 102, to be, " that how clear soever the fraudulent purpose, unless the writing is sufficient to accomplish that purpose, it is not

forgery, since, with a single exception, actions only, and not evil intentions, are punishable by the English law, and actions only which actually do, or *possibly may* produce injustice. *Rex* v. *Knight*, Ld. Raym. 527. 1 Salk. 375. 3 id. 186. *Rex* v. *Ward*, Ld. Raym. 1461. Str. 747." *Rex* v. *Knight*, was for forging an endorsement on an exchequer bill. By statute, a man indebted to the king might pay in such a bill, *writing his name* on the back, and then only the collector might pay the same to the exchequer, instead of specie. The indictment alleged that the collector forged an *endorsement* on an exchequer bill, in order to defraud the king. The court said an *endorsement* might not be *writing the name* of the payor, but a writing of something else. Holt said : " If it does not tend to the deceit of any one, it is no crime ; and it *could not* deceive any one here, because it is not *the sign*. This and the like cases serve to show what is not the subject of forgery. It is such a writing as on its face *cannot* deceive. If the counterfeiting of such a writing be stated in the indictment, with the general averment that it was meant to defraud, and nothing more, this is bad pleading, because it is averring a consequence which cannot legally follow ; otherwise of a writing apparently available. What are the requisites of such a writing ? The argument for the prisoner is, that the writing must appear of itself to bind some interest, or assert the legal right and power of control. Take this to be so. Does not the writing in question plainly inply this right and power ? An indictment at common law was for forging a surrender of I. S.'s land ; and it was held good, though it was not averred that I. S. had any land upon which it could operate. *Rex* v. *Goate*, Ld. Raym. 737. *Rex* v. *Crooke*, 2 Str. 901, S. P. The surrender was *prima facie* sufficient to accomplish the forger's intention, which was to defraud. True it might not defraud J. S., who owned no land ; but it might be used by the forger in dealing with others, as by conveying the land described, or raising money by pleading the forged deed of surrender, or mortgaging the land. The bond forged by Doctor Dodd, was not intended to defraud Lord Chesterfield, the supposed obligor,

but the money lenders with whom it was pledged. *Vide* Hammond, before cited, ch. 3, § 2, pl. 143 to 145. Such writings seek a means to attain their end through the agency of the law, being invested with a character to which the law will give a definite force and operation. Id. pl. 108, 109. But there are other writings having of themselves no legal efficiency, which are equally the subject of forgery. These are such as operate through the agency of natural causes : in other words, from the influence which they will naturally possess over the minds of others. As an instance of the latter, Mr. Hammond mentions a letter pleading distress, because it seeks to attain its end by means of the influence it will naturally exercise over the feelings of those to whom it is communicated. Id. pl. 108, 110. Looking to the order in question from the latter point of view, we may ask what more natural contrivance to defraud the Bank of Kentucky than that which it presents ? The argument is, that still it *might not* work that effect, because it is not averred that Mr. Ebbetts could deliver the plates. The books already cited show that this is not the criterion ; but that all the extrinsic circumstances tending to the fraud, which are implied by the writing, shall be taken to exist. Mr. Ebbetts was a good deal questioned on the trial upon the relation he held to the plates, and with a view to prove that they had never been committed to him by the Bank of Kentucky ; and so that he would not be liable to the bank in case of their loss, and had no right to act upon the order. But the issue upon the indictment involved no such inquiry, farther than to see whether mischief to the bank was possible. That it was, there is no dispute in fact. Had it not been for an accident, the fraud upon the bank would have been complete, though that upon the community would probably have been much greater. But this is anticipating a point raised on the bill of exceptions. It is not the real but the apparent right of the supposed parties which the law regards in its provisions against forgery. It assumes and levels its denunciations at falsehood, as well in as out of the writing. It seeks to prevent mischief to society, which is usually as great without as with that concurrence of exterior

circumstances which might give effect to the instrument, if genuine. False names, false rights and false descriptions are, as well as false instruments, parts of the forger's machinery. It was once doubted by Sir Martin Wright whether, to constitute forgery of a deed, it must not purport to be the deed of a really existing person, or some one who once had existence, so that it might by possibility operate. But eleven out of the twelve judges agreed that the forgery was complete, though there never was any such person as the supposed grantor in existence. Among the reasons given, it was said, "Here is a title in *show* and *appearance*, &c. This title is transferred in *show* and *appearance* by the deed stated in the case; and all this is done with intent to defraud an innocent person," *Anne Lewis' case*, Fost. 116, 118, coupling this with the cases before cited of *Rex* v. *Goate* and *Rex* v. *Crooke*, and though neither subject matter nor grantor ever in fact existed, yet the false deed may be furnished as a forgery. Mr. Hammond treats it as now perfectly settled, that both under the statutes and at common law, a writing shall, in its professed legal character, be a forgery in spite of the non-existence of facts essential to that character. Dig. Law of Forg. ch. 3, § 3, pl. 202, 206. In id. pl. 207, he thus sums up the cases: "It is immaterial then, to the crime of forgery, that the existence of such an instrument as it professes to be, is, from intrinsic circumstances, physically impossible; since the fictitious character which it wears upon the face of it is not influenced by matter *dehors*, nor its operation, therefore, as an engine of fraud, (the only thing regarded,) thereby affected." That he is sustained by several cases, we have already seen; and there are many others. That the supposed testator is living, will not render the fabrication of a will less a forgery. See the cases cited by Mr. Justice Bronson, 17 Wendell, 542. Many other cases sustain the same principle; e. g. forging a protection from a parliament man in the name of one who is not a member, *Rex* v. *Deakins*, 1 Sid. 142; an endorsement in an assumed name, *Bolland's case*, Leach, 83; *Whiley's case*, Russ. & Ry. 90; *Rex* v. *Marshall*, id. 75; *Rex* v. *Francis*, id. 209; a bill of exchange drawn in

fictitious names, *Rex* v. *Wilks*, East's P. C., ch. 19, § 46 ;
see also 2 Russ. on Cr. 325. An indictment was for utter-
ing in Pennsylvania a forged note on the Merchants' Bank
in the city of New York, without averring that it was a
corporation. Duncan, J. said the crime might be complete,
though there was in truth no such bank, chartered or un-
chartered. *The Commonwealth* v. *Smith*, 6 Serg. & Rawle,
570. He adds, generally, that an instrument purporting to
be valid as to the purposes for which it was intended, may
be the subject of a criminal forgery, though it should ap-
pear by extrinsic circumstances to be impossible that it
could really exist. This was in 1819, and spoken from the
same cases, and, as we have seen, in nearly the same words
with Mr. Hammond, who wrote four years afterwards.
All these cases take *appearances* as the test. The language
of the court in *Anne Lewis'* case may be brought over and
applied to the instrument in question. Here is in *show* and
*appearance* an order from the owner of goods to his deposi-
tary, that he should deliver them to another; and this is
done with intent to defraud. Such *show* and *appearance*
are stated in the indictment, and averred to be a forgery
with intent to defraud; and reasoning from what we have
so far seen, makes a forgery, it seems clear that nothing
more need be averred. Admitting that the prisoner had
been mistaken in supposing that the drawer or drawee of
the order had any means whatever of controlling the plates,
or the bank any existence, still the crime might be com-
plete; for all the books agreed that *actual fraud* is not a
necessary ingredient of the offence. It is the fabrication
with *the intent to defraud,* and the crime shall not be ex-
cused because the offender may have committed a blunder
in seeking his object. The very definition of the crime
shows this. It is the false making, &c. *for the purpose* of
fraud and deceit. 2 Russ. on Cr. 291, Philad. ed. 1836.
Id. 333, 4, and the cases there cited. 2 East's P. C. 855.

It must still be conceded, however, that the prisoner is by
no means without considerable appearance of authority in
favor of his objection to the indictment. In *Walton* v. *The
State,* 6 Yerg. 377, the supreme court of Tennessee held it

The People v. Stearns.

necessary to show by the indictment that the supposed draw-
er of an order for goods had an interest in them. Peck, J.
however remarked that the order did not *purport* to come
from one having authority, p. 385. The decision was
founded on *Clinch's case,* which we were referred to on the
argument. The latter arose under the English statute
making it felony to forge an order for the delivery of goods ;
and it was said that the indictment must show the supposed
drawer's authority to make the order, and that the order was
to the real holder of the goods. 2 Leach, 54. 2 East's
P. C. 938. 2 Russ. on Cr. 409. The insurmountable dif-
ficulty in that case was, that what the indictment sought to
make a forgery did not purport to be directed to any one.
*Rex* v. *Cullen,* 5 Carr. & Payne, 116. And East observes
that, if it purport to be an order which the party has a right
to make, although in truth he had no such right, and al-
though no such person existed in fact as the order purports
to be made by, it falls within the penalty of the act. 2 East's
P. C. 940. Indeed, one part of the reasoning in Clinch's
case itself, seems to admit this, and the remark is supported
by a case previously decided. *Rex* v. *Locket,* East's P. C.
940. *Commonwealth* v. *Fisher,* 17 Mass. R. 46. *State*
v. *Holly,* 2 Bay, 262, S. P. See also 2 Russ. on Cr. 325.
The same remark is made by Mr. Russell. 2 Russ. on Cr.
410. Surely a like observation is applicable to the *direc-
tion ;* if that purport to address a person having the custody
of the goods, how is it material that the fact should be so,
if we can suppose a possible fraud without it ? That may
happen, though the drawee be a mere servant or neighbor
of the depositary. Nor, as I apprehend, is the fraudulent
removal or conversion of goods, they only cheat intended to
be avoided by the law ; an order for delivering goods may,
like a deed or note, be used as the means of fraudulently
obtaining credit. The forgery of the protection from the
pretended member of parliament was held pernicious, be-
cause it might be used to keep creditors at bay. 1 Sid.
142. And notes are commonly forged not to defraud the
maker, but a bank or other lender. All the names may be
assumed, and yet the crime be complete. *Rex* v. *Wilcox,*

Russ. & Ry. Cr. Cas. 50, referred to by Russ. on Cr. Law in connection with *Clinch's case*, related to the forgery of an instrument void on its face; the tendency of which could only be made out by averment. The case of *The People* v. *Wright*, 9 Wend. 193, would certainly appear to hold that though the fabrication be of an instrument having a definite legal effect, it is still necessary that the indictment should aver the existence of extrinsic circumstances. The indictment was for the forging, uttering and publishing a mortgage against one *Shafer*, with intent to defraud him and one McCormick; and because it did not aver that there was any such land, or that Shafer had title to any such land as the mortgage purported to describe, the judgment was arrested. The indictment was founded upon the 22d section of the act concerning forgery, 2 R. S. 558, 2d ed. and the 37th and 39th sections of the same act. The 22d section declares that one who shall be convicted of forging "any deed or other instrument, being or purporting to be the act of another, by which any interest in real property shall be, or purport to be transferred, conveyed, or in any way changed or affected, with intent to defraud, shall be adjudged guilty of forgery in the first degree." The 39th section provides for punishing the uttering, and the 37th the having in possession with intent to utter such forged deed or instrument. The statute was held to embrace the forgery of a mortgage deed. The court, in fixing on the form of an indictment came to the conclusion, that purport alone, though followed with the averment of an intent to defraud, was not enough, without showing the actual existence of real property to which the mortgagor had title. This form of pleading is given by some of the English precedents upon a similar statute. But there are a series of well considered British decisions, which show that such particularity is not necessary; and I think raise a serious doubt whether this court did not, in *The People* v. *Wright*, adopt a rule of pleading at least too severe, if it is made applicable to the generality of indictments for forgery. We have already noticed *Rex* v. *Goate*, which held that an indictment for forging a surrender of land need not aver title in the surrenderer.

*Gade's case,* East, P. C. 874, 2 Leach, 847, S. C., related to a conviction on an indictment for forging a paper purporting to be a transfer of stock from W. H.; and the judges, on the case being reserved, said " the nature of the offence would not have been altered, if W. H. had not had any stock standing in his name; for the transfer forged by the prisoner was complete on the face of it, and imported that there was such a description of stock capable of being transferred." *Rex* v. *Goate* drew a distinction, that, where an *action* is brought for forging a deed, the title of the supposed grantor must be shown; otherwise, where an *indictment* is preferred for the crime. And see 1 Barnardist. K. B. 169, and Fitzg. 59, 60. But *Rex* v. *Crooker,* 2 Str. 901, is the prominent case on this point. It was for forging a lease and release. The indictment showed title of certain land to have been in the supposed releasor; but in reciting the release, this appeared to be for other land not shown to have been the releasor's. The prisoner being convicted, a motion was made in arrest of judgment. The case in Strange says, that the court, " for several terms, inclined strongly with the objection; but finally declared they were all of opinion to overrule it." They said it was not necessary there should be a charge, or a possibility of a charge, as the statute declaring that the intent to charge land should constitute the crime. The jury had found that the forgery was with intent to molest the releasor in relation to his land, though the deed blundered in describing it. It seems by a report of the same case, in 1 Barnardist. K. B., 168, that the court were, at first, unanimously in favor of arresting the judgment, and gave reasons which are there set down in full, after a learned argument, which is also there reported. But all the arguments of the counsel and court on both occasions are most elaborately reported by Fitzg. p. 57 and 261. Ld. Raymond, Ch. J. at the last cited page, says, " A forged conveyance can give no title, and therefore it is absurd to imagine that the statute could have meant to punish such forgeries only as might give a title. No, the statute is, ' that if any person forge any false deed, &c. to the intent that the state of freehold of any person, of, in or to any

lands, &c. shall or may be molested, &c. troubled, defeated, recovered or charged, then, &c.' Now plainly by the said act two things only are required to constitute the crime ; viz. a forgery, and that such forgery be with intent to molest the owners of the freehold ; so that it is not necessary that such intent should take effect, &c. It is enough that thereby the parties may possibly be molested, as by being put to defend their title." He then argues that the intent need not be specially set forth ; but adds, that what is or is not an intent to do a thing within an act of parliament, is fit for the determination of the jury, " because such intent is to be collected from facts and circumstances, of which they are the proper judges." Page, J. said. " It is like the case of an indictment for burglary, laying that a house was broken with intent to steal. Such intent is left to the jury, and the special circumstances that would show such intent, are never set forth in the indictment." Probyn, J. said, " To lay all facts proving an intent, were to make indictments so special, that judgments would too frequently be arrested." And so it may be said of the case at bar, that the special circumstances showing how the fraudulent intent might touch the plates are material for the jury, but need not be averred. As title raised the possibility of mischief from the deed, so Ebbett's power of actual control over the plates made it possible to subtract them by a forged order or letter. Why should the latter be averred specially more than the former ?

We have heretofore mainly attended to the connection apparent from the order between the two cashiers and the plates. The principle of the cases already cited, and others which we shall notice hereafter in respect to the description and proof of the persons sought to be defrauded, will be found to furnish a sufficient answer to the objection that the interest of the Bank of Kentucky in the plates was not averred and therefore could not be proved. The order purports to be dated at the bank, and signed by a cashier, and is for " the plates of our bank." It imports an ownership in the bank, and an attempt to exert a lawful control by its cashier. Every body would so understand it on a perusal of the whole paper.

Another objection to the indictment is, that the persons whom it is alleged the prisoner intended to defraud are not described with sufficient certainty. They are "The president, directors and company of the Bank of Kentucky, and other persons to the jurors aforesaid unknown." The objection is, that to warrant such general words as " the president, directors," &c., it should be averred that they were a corporation. Without inquiring whether the addition " divers persons unknown" would not be sufficient to make the averment good, even if the description of the bank were void, we are clear that the description of the bank is sufficiently certain and might have been sustained by proof either that the bank was a corporation, as was done at the trial, or that it was a joint stock company or partnership, acting under the name of " The President, Directors," &c. To this latter point see *The Commonwealth* v. *Smith*, 6 Serg. & Rawle, 568. Had the bank sued in this court as a corporation, it need not have been averred that it was a body corporate, any more than A. B. suing must aver that he is a natural person. And in describing persons who are aimed at by a fraudulent forgery, or as being made parties to fraudulent paper, we think even less certainty is required; though we agree that the description of the intended dupe must be true. Where the partnership name was mentioned as the drawees in a forged bill, it was held that the indictment need not give the names of those who composed the firm, though this would be necessary in an action upon a bill either by or against a firm. *Rex* v. *Lovell*, 2 East, P. C. 990 ; 2 Leach, 282, *S. C.* And *vid. The Commonwealth* v. *Smith*, 6 Serg. & Rawle, 568, 570. If it be answered that the drawees or other parties supposed may or may not exist, but that the person aimed at as the dupe must exist, let the distinction avail, and we have here a *corporation* described with all the usual certainty ; a corporation which, though foreign, is clearly the object of criminal mischief within our statutes of forgery. 2 R. S. 587, § 37, 2 ed. When Mr. Hammond wrote, which was in 1823, the question according to him, remained open, whether words describing the firm, as in *Rex* v. *Lovell*, would be a sufficient designation

of the persons defrauded. Dig. of the L. of Forgery, pl. 347, and note. For aught I have been able to learn from the books, that question remains open still, and there is no need of closing it in order to sustain this indictment. We therefore think the *demurrer* was not well taken.

The points arising on the *bill of exceptions* have been in a great measure anticipated. The means and tendency to a gross fraud were established by competent evidence, to the satisfaction of the jury; the connection of the bank and the assumed drawer and drawee with the plates being such as to facilitate the effect of the order, that was enough. The incorporation of the Bank of Kentucky, under the name stated in the indictment, was duly proved by a copy of its charter authenticated pursuant to the statute of the United States; and that proof was admissible under the averment in the indictment.

The sessions are advised to pass sentence upon the prisoner.