HENRY H. HALL, plaintiff in error, *v.* DAVID M. IRWIN *et al.*, defendants in error.

*Error to Sangamon.*

A. being at the point of death, made his will, directing, among other things, how his real estate should be disposed of, but omitted to name an executor. B. was duly appointed administrator with the will annexed, who, supposing that he had authority, sold the land and executed a deed with intent to convey the fee. In an action of ejectment against the grantee brought by the heirs of the testator, this deed was offered in evidence, and excluded by the Court: *Held,* that as the administrator had not the power to sell and convey by virtue of the will, either at common law or by the provisions of our Statute of Wills, the deed was properly excluded.

Courts of Equity will appoint trustees where a trust is given and no trustees appointed. But these Courts only act when called upon by the *cestui que trust,* on full notice being given to all parties interested.

EJECTMENT in the Sangamon Circuit Court, brought by the defendants in error against the plaintiff in error, and heard before the Hon. Samuel H. Treat and a jury at the July term 1844. The suit was commenced in the Cass Circuit Court, and brought by change of venue into the former Court. A verdict was rendered in favor of the plaintiffs below, and a judgment thereon for a recovery of the premises, and a writ of possession ordered.

*W. A. Minshall,* for the plaintiff in error.

1. The devise to an executor, without naming him, though not coupled with an interest, survives at common law. *Taylor* v. *Galloway,* 1 Ohio, 233; Toller's Ex., 92, 93, 97, 362, 364, 371, 372, 373. Or in case of death or failure to act. 2 Black. Com. 503; *Farewell* v. *Jacobs' Adm'r,* 4 Mass. 634, 636.

2. There, the power is given to the executor, *virtute officii.* The power must survive to effectuate the intention of the testator; and the intention of the testator must govern in all such cases. *Zebach* v. *Smith,* 3 Binn. 73; *Franklin* v. *Osgood,* 2 Johns. Ch. R. 19, 22; *Franklin* v. *Osgood,* 14 Johns. 527, 546, 553, 558; *Peter* v. *Beverley,* 10 Peters, 532, 564, 565; *Jackson* v. *Ferris,* 15 Johns. 346; *Jackson* v. *Givan,*

16 Johns. 167, 170; *Popham* v. *Partington*, 3 T. R. 665, 675; *Gibbs* v. *Marsh*, 2 Metc. 243.

3. When the power, though naked, yet if coupled with a duty to be performed by the executor, or to pay debts, or distribute legacies, out of proceeds, the power at common law must survive. *Franklin* v. *Osgood*, 14 Johns. 553, 554; Sugden on Powers, 141; Powell on Devises, 297; *Peter* v. *Beverley*, 10 Peters, 564, 565; 2 Dana, 74, 86; 16 Johns. 167, 170, 171.

4. If the will gives power to sell or mortgage lands, without naming a dower, the power will, if a contrary intention do not appear, rest in the executor, if the fund is to be distributed, either for the payment of debts, or legacies. *Conklin* v. *Edgerton's Adm'r*, 21 Wend. 443, 445; and the person to whom the duty of payment attaches, the will has been held to imply that such survivor may sell. Ibid. 443.

5. By our statutes, the administrator with the will annexed is required to perform all the duties as enjoined by the will extending to the real and personal estate, payment of legacies and bequests, &c. And so by the statute and common law united, is the donor of a trust power by special appointment of the testator in this case, and must have power to sell to carry out the testator's intention. R. L. 617, 618, § 19; Gale's Stat. 691, 692, § 21; R. L. 619, § 27; Ib. 641, § 89; Gale's Stat. 709, § 89; R. L. 64, 70, 72, §§ 88, 74, 75, 128; Ib. 657, § 1.

6. The object and design of these Acts was to carry into effect the direction to sell lands when the testator had used words restrictive of, or made omissions which practically defeated his intention, and to prevent the delay and expense of resorting to Chancery. *Jackson* v. *Givan*, 16 Johns. 171.

7. Equity considers lands directed in a will to be converted into money, as money, and money to be put into lands as money. *Craig* v. *Leslie*, 4 Peters' Cond. R. 332 to 344. And Courts of law adopt the rule in Equity, which reduces the land, by the terms of this will, to personalty, and within the jurisdiction of the Ordinary, and would give the admin-

istrator jurisdiction over the subject matter, even overruling the technical construction of such powers.  *Conklin* v. *Edgerton's Adm'r*, 21 Wend. 443.

*W. Thomas*, for the defendants in error, contended,

1.   That the power to sell is to be considered as a personal trust, and no one being appointed to execute the trust, no sale can be made except under the authority of a decree in Chancery.

2.   As a general rule, if two or more executors or trustees are authorized to sell real estate, all must join in the sale to make it valid.

.3.   Whenever a power is of a kind that indicates personal confidence, it must in equity as well as at law, be considered to be confided to the individuals to whom it is given, and will not, except by express words, pass to others than the trustees named; though they may, by legal transmission, sustain the same character.

4.   If the power to sell, in the case at bar, would not pass from an executor or trustee named in the will refusing to act, or being incapable of acting, to an administrator with the will annexed, surely it could not pass from the omission to name or appoint an executor or trustee.

5.   It may be contended that, by the provisions of this will, the power conferred is not a naked power to sell and convey, but that it is coupled with an interest.  The defendants may well admit this proposition, and still insist that no authority was conferred upon any one to execute the trust, and, therefore, no sale could be made without a decree of a Court of Chancery.

6.   A deed or power of attorney executed without naming a grantee, or attorney, would be void; so of a will; but parties having an interest might, by application to the Chancellor, obtain relief.

7.   The idea of conferring power to act, pre-supposes a person named to execute the power; without this no action can be had.

To sustain the positions here assumed, see *Wells* v. *Cow-*

*per,* Ohio Cond. R. 278; *Woodbridge* v. *Watkins,* 3 Bibb, 349; *Conklin* v. *Edgerton's Adm'r,* 21 Wend. 430, and the authorities cited in those cases; 1 Powell on Devises, 136, 139, 143; 1 Roper on Legacies, 147.

*A. Lincoln,* for the defendants in error, continued the argument, and cited 2 Story's Eq. Jur., §§ 1058 to 1064; Ib. 976; 1 A. K. Marsh. 87.

*Minshall,* in conclusion, cited *Perkins* v. *Fairfield,* 11 Mass. 227.

The Opinion of the Court was delivered by

KOERNER, J.* This was an action of *ejectment,* originally commenced in the Circuit Court of Cass county, by defendants in error against plaintiff in error, for the recovery of a quarter section of land in Cass county. By change of venue the cause was removed to Sangamon county, where a trial was had at the July term 1844, of the Sangamon Circuit Court, and a verdict was found in favor of defendants in error.

By agreement of parties, but one point is presented for the decision of this Court, involving the question, whether one Benjamin H. Gatton, administrator with the will annexed of the estate of Thomas Payne, deceased, had power to convey the land in controversy, under and by virtue of the will of said Thomas Payne, and the letters of administration granted thereon by the Probate Justice.

The only error assigned is, that the Court refused to admit in evidence a deed made by said Gatton, as such administrator, to said Hall for the premises in question, which was offered to sustain title in Hall.

The following is the will under which Gatton claims a right to convey: "My will is, that my land and personal property be sold at such credit, and in such manner as is thought most advisable to my executor, for the interest of my little chil-

---

* LOCKWOOD, J., did not sit in this case.

dren, and the proceeds to be put at interest for their support and education, if the interest should prove sufficient, otherwise the principal is to be used. But the land is not to be sold until it will bring eight dollars per acre, and as they arrive at age or marry, that distribution be made of what shall remain in equal proportions, not depriving the younger children of means of education. I mean that my executor shall use some discretion in distributing, so as to retain sufficient to educate the younger children.

"September 4, 1835.            Thomas Payne, [SEAL.]"

"Attest,
      A. S. West,
      Thos. S. Howard,
      Ephraim Mozley."

The counsel for the plaintiff in error has referred to numerous authorities for the purpose of satisfying this Court, that the power conferred in this will was not a mere naked power, but one coupled with an interest or trust, and, therefore, capable of surviving. I have, however, not been able to perceive, that the question as to the nature of this power is necessarily involved in the decision of this cause. There seems to be no doubt, that the executor, if one had been appointed in this will, would have had power to sell the land in question, provided he had conformed with its provisions. The true and only question is, has the administrator with the will annexed, appointed by the Probate Justice, there being a failure of an executor, succeeded to all the rights and duties which would have devolved upon the executor.

I understand the plaintiff in error to assume the position, that the administrator with the will annexed, has succeeded to all the rights and duties of the executor, without regard to the nature of such rights and duties, and whether they concern real or personal estate, and that he can exercise them both by virtue of the common law and our statute. In order to sustain the first branch of this position, he relies on the following authorities: 2 Black. Com. 503, 504; Toller on Executors, pages 92 et passim; Farewell v. Jacobs' Adm'r, 4 Mass. 634.

I have examined these authorities with some care, but do not think that they affirm the doctrine advanced. It is true that they all concur in saying, that the duties and powers of such an administrator differ but little from those of an executor, and that the former is equally bound to act according to the provisions of the will. But in the passages referred to in Blackstone and Toller, wills and testaments are considered merely in regard to personalty, and are treated in their original common law sense. Both writers speak of these administrators in connection with the statute of 21 Henry 8, providing for their appointment in certain cases, a statute passed a number of years before lands were made directly devisable by will.

Their observations, then, when fairly understood, cannot be so extended as to apply to realty, particularly when such a construction runs counter to the whole doctrine in regard to wills and devises, as firmly established in the common law.

Before the passage of the Statute of Wills, (32 Henry 8,) the office of executor and administrator was well known and defined. It related to personal property only. After the introduction of conveyance by will, executors were frequently appointed by the testator to effect the conveyance; but they were not necessarily, and by virtue of their office, the agents for such purpose. As far as they were charged with the alienation of lands, they acted by virtue of the power given in the will, a common law power, or as donees of the grant, and not as executors. Other persons than the executors might be charged with the execution of this power, and often were so charged, and persons having been appointed executors, with power to sell land, could sell without probate of the will, and without taking out letters testamentary. This is the unquestionable law, and from it the deduction is irresistible, that the office of executor and trustee to sell land is not necessarily blended, and that executors may act in a double capacity; first, as executors by virtue of their office, and second, as agents, or trustees under a warrant of attorney. If they act in the latter capacity, the trust imposed

upon them is of a special and confidential character, and cannot be delegated.

The case of *Farewell* v. *Jacobs' Adm'r*, 4 Mass. 634, so far from militating against the views just expressed, appears to give them additional strength. It was there held, that an administrator *de bonis non, cum testamento annexo*, was liable for the non-execution of a duty originally devolved upon the executor, who had given up his office. But they make this important qualification; "the duties of the executor resulting from the nature of the office, and charged upon him as executor, devolve upon an administrator *de bonis non, cum testamento annexo*, where the authority is not necessarily connected with a personal trust or confidence reposed in him by the testator." Here we find at once the true line of demarcation between the executor and the trustee. Where the trust commences, there the office of the executor ends, and *a fortiori*, the office of the administrator, who has taken his place.

The counsel for the plaintiff in error, anticipating, perhaps, this view of the case, has sought to avoid its effect by an ingenious course of reasoning. He argued that, inasmuch as in this case the testator has not named his executor, and as he is presumed to know the law of the land, by which, in such a case the Probate Justice appoints an administrator to execute the will, it was necessarily this person so to be appointed whom he had in his mind's eye, and the power conferred in the will, being one coupled with a trust, capable of surviving, the administrator with the will annexed must be considered as having received his commission from the testator himself. I cannot assent to this proposition. Trust is, in its nature, of a relative character. It cannot exist unless it has a repository. The person bestowing it must know him on whom it is bestowed. It would be refining, indeed, to contend that the testator meant to place his confidence in some indefinite creature of the law, springing into existence years perhaps after he himself had ceased to exist.

It may be objected, that Courts of Equity will frequently

appoint trustees where a trust is given, and no trustee appointed. This is true, but then these Courts do only act when called upon by the *cestui que trust;* they act according to well established principles of law, with full notice to all parties interested. They are able to protect the rights of the *cestui que trust* in the most ample manner, and are emphatically the guardians of infants, and *cestui que trust.* Surely the same cannot be said of the Probate Justices, who, in most cases, act but ministerially, and whose proceedings are generally *ex parte,* and strictly regulated by statutory provisions.

In this view of the case, the Court are fully sustained by decisions made in some of our sister States. This very question was decided in Ohio, *Wells* v. *Cowper,* 1 Ohio Cond. R. 278, upon distinctions drawn from the common law. The devisor, having land in Ohio, but himself residing in Virginia where a statute exists authorizing in terms an administrator with the will annexed to execute a power of selling land, given by the will to an executor, made a will constituting J. Baker his executor, with full power to dispose of all his lands in Ohio and Virginia. Baker refused to act, and the administrator with the will annexed having, as such, agreed to sell land in Ohio, a bill was filed by the vendee to compel a specific performance. The Court dismissed the bill, deciding that the administrator could not convey, on the ground that the power of the executor could not be thus executed by one whom the testator never had mentioned, nor could have contemplated as a depository of such powers.

This case was cited with great approbation by Justice Cowen, in delivering the opinion in *Conklin* v. *Edgerton's Administrator,* 21 Wend. 423, a case to which I will have occasion to refer more fully hereafter, and the principles laid down in the Ohio decision were fully adopted by the Supreme Court of New York. The distinction between an executor as such, and as trustee is also recognised, and ably discussed by Chief Justice Savage in *Judson* v. *Gibbons,* 5 Wend. 224. I confine myself to a bare reference to these cases, which are very full, and very long; even extracts would extend this opinion to an undesirable length.

Having disposed of this portion of the cause, I will examine the question with reference to our own statute, which, it is insisted, confers the power to sell if it was given to the executor, or the administrator with the will annexed. Before I do this, however, I will advert to a few well known maxims of law.

1. That a statute changing the course of the common law in derogation of it must be strictly construed; and

2. That if it appears doubtful from the phraseology used, whether the legislature intended to make such a change, the presumption is, that such was not their intent.

Upon a careful perusal of the Statute of Wills, R. L. 611, I feel convinced that our legislature did not mean to obliterate the well established boundaries between an executor as such, and a trustee; and a trustee appointed by will, and a stranger, who administers with the will annexed. It is not contended that such an administrator has the power to sell land, when it was originally given to the executor in the will, conferred upon him in terms by our statutes; but the plaintiff in error insists, that it must be implied from sections twenty seven and thirty seven, in our Statute of Wills. The twenty seventh section provides, that the administrator with the will annexed shall give bond in a sum double the amount of the estate, and the conditional part of the bond contains the clause, that the administrator *cum testamento annexo* will make an inventory of the goods and chattels, lands and tenements, and will well and truly fulfil the duties enjoined upon him in and by the will. The thirty seventh section provides, that all estates, both real and personal, that are not devised or bequeathed in the last will and testament of any person, shall be distributed in the same manner as the estate of an intestate; but in all such cases, the executor or administrator with the will annexed shall have the privilege of administering on the same. But it seems to me that the passages can be easily reconciled with the tenor and scope of the whole statute. Every administrator is directed by the seventy seventh section to take an inventory of the lands and tenements of the intestate, but will it be contended that

therefore an ordinary administrator has acquired power over the land? Certainly not. In certain contingencies pointed out by the statute, it may become necessary to convert, under the direction of the Court, the realty into personal assets and it is for this reason, that all administrators must keep an eye upon the real estate.

The word *"estate"* used in the twenty seventh section may well be limited, with reference to the well known powers of the administrator with the will annexed and the main subject matter of the Statute of Wills, to mean personal estate. Besides, the word *"estate"* is frequently made use of throughout the statute, where manifestly personal estate is merely intended; for instance in the thirty seventh section, the undertaking of the administrator with the will annexed, in his bond to execute the duties enjoined on him by the will, must be understood as referring to his well known common law duties devolving upon him as the successor of the executor, and not as the successor of an executor, as far as the latter was made the confidential trustee of the testator. The word *"administrator"* in the thirty seventh section explains itself sufficiently, if its technical meaning be adhered to.

There are, however, many provisions in the Statute of Wills, which completely refute the view taken by the plaintiff in error. The twenty second section prescribes the oath of office to be taken by the administrator with the will annexed, which surely ought to be co-extensive in its obligation with the duties assumed by him. It is in the following form: "I do solemnly swear that this writing contains the true last will, &c., and that I will well and truly execute the same by paying first the debts and then the legacies mentioned therein, as far as the testator's goods and chattels will thereunto extend and the law charge me." The sixty second section gives the form of the letters of administration, which is the commission under which administrators have to act, and in these letters the personal estate alone is mentioned. The same section provides, that the same form shall be

observed in cases where letters are granted to the adminis-
trator with the will annexed.

The eighty ninth section expressly provides, that sales
made under a will, when such power shall be given therein,
made in the manner and by the person appointed in such
will, shall be good and valid, which negatives the idea that
sales by other persons than those appointed are good. This
last section seems to me to be conclusive. It could not have
been the intention of the legislature to interfere so materially
with the rights of the citizen as to substitute, in the manner
contended for, a perfect stranger in the place of one spe-
cially selected as the confidential friend and trustee by a
dying man, when such friend, for some reason or another,
was prevented from complying with the request of the de-
ceased. It might happen that the principal creditor of the
testator, who, under the statute, is entitled to apply for admin-
istration, on failure of widow or next of kin to administer,
would fill the place of the contemplated friend.

. The case now presented to the decision of the Court illus-
trates the evil consequences which might flow from such a
law, if it were engrafted on our statute book. Payne, as it
was stated in the argument, being at the point of death,
makes his will in great haste, expressing the greatest solici-
tude for his little children, and omits to name an executor.
It seems he left no wife, and his children being of tender
age, are incapable of administering. Now his principal credi-
tor may have stepped in and would stand charged with the
management and sale of the land, for the purpose of main-
taining and educating the little children of the deceased, if
the law were as insisted on by the plaintiff in error.

The case of *Conklin* v. *Edgerton's Adm'r*, 21 Wend. 423,
before referred to, turned in part on the construction given
to the Statute of Wills in New York, and is indeed a very
strong one in favor of the view just taken. The New York
statute relating to administrators with the will annexed, is as
follows: "In all cases where letters of administration with
the will annexed shall be granted, the will of the deceased

shall be observed and performed, and the administrator with such will annexed shall have the rights and powers, and be subjected to the same duties as if they had been named executors in such will."

This is strong language, and yet the Supreme Court of that State has decided, that a power to an executor to sell and dispose of real estate granted by a will, and to divide proceeds, cannot be executed by an administrator with the will annexed.

It is impossible to perceive any thing in the opinion of Justice Cowen, exempting the case now before the Court from its operation. The passages alluded to by counsel, as placing this case beyond the reach of this decision, refer to joint appointments of two or more persons, where, when a trust or an interest is coupled with their power, and one dies, the survivor will be entitled by implication to execute the trusts, if such can be done consistently with the language of the whole will, or to cases where land is directed to be sold without saying by whom, and where the funds being distributable by the executor appointed in the will, the latter is said to have the power to sell, by necessary implication.

These cases differ widely from the one at bar. The administrator is the successor of the executor, and cannot be called, in legal parlance at least, his survivor. Survivorship, in its legal sense, implies the pre-existence of a joint right or interest, and joint too in point of time. Legally speaking, a successor can never be a survivor, or a survivor a successor. The want of this proper distinction is apt to create considerable confusion.

The Court is satisfied, that an administrator with the will annexed, has no power without the aid of Courts to sell lands, devised to an executor to be sold, or directed to be sold by an executor, when such executor has died, refused to act, or is incapable to act, neither at common law nor by our statute, and is of opinion, that the deed of Gatton, administrator, *cum testamento annexo*, as conveying no estate to Hall, was properly excluded on the trial. There is no error.

Judgment must be affirmed with costs. The cause will be remanded without prejudice to the plaintiff in error, to proceed further under our statute.

The following dissenting opinion was delivered by

Young, J. In dissenting from the opinion of a majority of the Court, it is only necessary to premise, that I rest my opinion on a reasonable and proper construction of our own Statute of Wills, and not upon decisions predicated upon the common or statute law of England, or the statute laws of our sister States, differing in a more or less degree from our own.

The testator, Thomas Payne, made a will, dated the 4th day of September, 1835, by which he directed that all his land and personal property should be sold by his executor, for the interest, support and education of his children, with direction that distribution should be made of the remainder in equal proportions among them, as they respectively married or became of lawful age, &c.; the land not to be sold until it would produce eight dollars per acre, and some further discretionary power to be exercised by his executor, in the application of the proceeds of the sales of his property as provided for, and limited by his will. The testator then died without naming an executor. Letters of administration with the will annexed were granted to Benjamin H. Gatton, the 9th of September, 1835, who gave bond on the same day, in the penalty of $1000, and sold the land in question, to wit: the west half of the north east quarter of section nine, and the west half of the south east quarter of the same section, in township seventeen north, of range ten west of the third principal meridian, containing 160 acres, as such administrator, by virtue of the authority contained in the will, to the defendant, Henry H. Hall, for the consideration of $1400, being $120 more than $8 per acre, as required by the will. Gatton received the consideration money, made a deed of conveyance to Hall for the land, and Hall immediately thereafter entered into possession by virtue of such sale and pur-

chase, and has remained in possession ever since. The heirs of Payne, the testator, having brought their action of eject-ment against Hall, now seek to invalidate his purchase and deed from Gatton, upon the ground that Gatton, as such administrator, had no power to sell the land.

The nineteenth section of the Act relative to Wills, &c, Rev. Stat. 540, provides, that "when there shall be no executor named in the will, letters of administration, with the will annexed, shall be granted to such person or persons as may be entitled thereto." In this case, no ex-cutor was named in the will by the testator, and Gatton, on proving the same, was appointed administrator with the will annexed, by the Court of Probate, as the person en-titled thereto.

The twenty seventh section of the same Act provides, that "administrators, with the will annexed, shall, before enter-ing upon the duties of their administrations, enter into bond with security to be approved by the Court of Probate, in a sum double the value of the estate, payable to the People of the State of Illinois, for the use of the parties interested, and con-ditioned generally for a proper and faithful discharge of such duties as are at the time of executing the bond, or may thereaf-ter be required of them by law." The condition of the bond contains among others, the following clause: "and to well and truly fulfil the duties enjoined on him by the said will." There is also another clause to the following effect: "and shall moreover pay and deliver to the persons entitled thereto, all the legacies and bequests contained in the said will, so far as the estate of the testator will thereunto extend, according to the value thereof, and as the law shall charge him."

I contend that according to these provisions in the statute, that there was a power coupled with a trust, by the provis-ions in the will, and not a mere naked power, which, on the failure of the testator to name an executor, as in this case, devolved upon the administrator with the will annexed. The testator provides expressly by his will, that both his real and personal estate shall be sold, and the whole to be converted into money. This money is first to be applied in the support

and education of his children, and the surplus afterwards distributed by way of advancement to each, as they shall respectively become of age or marry. He expresses no intention, that either his land or personal property shall be distributed among his children. The law certainly intended, by a fair construction of its language, that the administrator with the will annexed should, in such cases, fulfil and discharge all the duties which would have devolved upon the executor, if one had been appointed, as were enjoined upon him by the will.

The legislature by these enactments, doubtless anticipated that frequent cases would arise, where, from various causes, the testator might forget or omit to appoint his executor, as in this instance, and have amply provided for such omission.

But the counsel for the defendants in error have said in the argument, that in this case a trust and personal confidence was intended to be reposed in the person of an executor, which will not apply to an administrator thus constituted, between whom and the testator no such friendly relations can be supposed to have existed, as with the person intended to have been appointed his executor. May not the same argument be used against the appointment of a trustee by a Court of Chancery, to execute this portion of the will? The only difference is, that the one is appointed by the Probate Court, while the other would be appointed by a Court of Chancery. The legal presumption in either case would be, that the appointment would be made in reference to the provisions contained in the will, the magnitude of the trust confided, and the discretion and integrity of the person appointed.

The bond in either case would be in proportion to the value of the estate, and the like presumption would arise in the one case as the other, that none other than good and sufficient security would be required or received.

The forty second section of the same Act also declares, that "all such estate, both real and personal, as is not devised or bequeathed in the last will and testament of any person, shall be distributed in the same manner as the estate of an

intestate; but in all such cases the executor or executors, administrator or administrators with the will annexed, shall have the preference in administering on the same."

Here again, real estate, *eo nomine,* is confided to the administration of the administrator with the will annexed, to the exclusion of an ordinary administrator, and with a control as unlimited and unrestricted as is given to an executor under the like circumstances.

By sections twenty six, twenty seven, and sixty six, the same oath is required to be taken by an administrator with the will annexed; a bond the same in substance and in form to be given; and letters of administration with the will annexed, similar in all respects, to be granted, as are taken, given by, and granted to an executor; and taking the Statute of Wills throughout all its provisions, and I can no where find that any difference is made between the powers and duties of an executor, and those of an administrator with the will annexed.

Section ninety three provides, "that in all cases where power is, or may be given in any will, to sell and dispose of any real estate or interest therein, and the same be sold and disposed of in the manner and by the persons appointed in such will, the sales shall be good and valid; and when any one or more executors shall depart this life before such sales be made, the survivor or survivors shall have the same power, and their sales shall be as good and valid as though they all had joined in such sale."

I quote this section for the purpose of illustrating the fallacy of the opinion of Mr. Justice Cowen, in the principal case relied upon by the counsel for the defendants in error, as reported in 21st Wendell's Reports. For as well might it be contended, notwithstanding our statute expressly declares, that " the survivor or survivors of two or more executors shall have the same power to make sales of land under a will, and that their sales shall be as good and valid as if all had joined in such sales," that such sales, if made, would, nevertheless, not be good, because Mr. Justice Platt said, in the case of *Franklin* v. *Osgood,* 14 Johns. 527, 553, which Jus-

tice Cowen says was a well considered cause, "that it was clear by the common law, a naked power given to executors to sell lands, would not survive;" that to contend that the powers and rights of an executor were not by the statute of New York, conferred upon an administrator with the will annexed. That statute declares that "in all cases where letters of administration, with the will annexed, shall be granted, the will of the deceased shall be observed and performed; and the administrators with such will annexed shall have the rights and powers, and be subject to the same duties, as if they had been named executors in such will;" and yet the opinion of the Court, as pronounced by Mr. Justice Cowen, in 21st Wendell, decides that the powers and rights of an executor are not by that statute conferred upon an administrator with the will annexed.

The numerous common law authorities referred to by the Court to sustain their opinion in that case, although entitled to great weight and consideration in determining the proper construction of a statute, should not be allowed to outweigh the express provisions of such statute, when inconsistent with such authorities; and when too, in many instances, the very object of the Legislature, in changing, amending, or repealing the former laws upon the subject, has been to supply the defects and omissions, and to provide against the hardships and mischiefs mentioned by the judges, as reasons for their decisions.

It seems to me, with all proper respect for the high authority from whence the decision in Wendell emanates, that it is in the very teeth of their statute, and supported by decisions, for the most part, which were made in the absence of all such statutory provision as has been mentioned.

Again, the counsel for the defendants in error, in speaking of the personal and confidential relations supposed to exist between an executor and the testator appointing him, have argued this case as though the "little children," as they are called, were to have been taken home by the executor, if one had been appointed, and clothed, and fed, and educated by him as such executor, *in loco parentis*, in all respects, and

with all that fidelity supposed to arise from the confidential relations presumed to have existed between him and the testator, as the reasons for appointing him.

Is this so? Would the appointment of an executor in this case, according to the provisions contained in the will, have rendered it improper to have appointed a guardian for these children? I apprehend not. It is true, that by the seventeenth and eighteen sections of the statute in relation to guardian and ward, Rev. Stat. 268, "every father of sound mind and memory, may, by his deed or last will, dispose of the custody and tuition of his children during their minority." But such a provision in the will would constitute the person appointed a guardian *pro tanto*, and not an executor properly as such, as the statute declares in such cases, that the person appointed thereby becomes invested with all the rights and powers, and subjected to all the duties and obligations of a guardian, under the restraints and regulations mentioned in the will, and imposed upon him by law; and this person may be an entirely different person from the executor.

It will not be contended, I presume, that these last named powers and duties are conferred upon the executor, to have been appointed by the provisions contained in this will. It follows then, that guardians at all events would have to be appointed, and guardians, it appears, by the names of the parties plaintiffs in the Court below, were appointed, although an executor might have been named in the will. It is the guardian, and not the executor, who is to have the care, custody and education of the children; and much of the trust and confidence supposed to have been imparted, or rather intended to have been imparted to the executor in this case, in regard to those "little children," has been properly confided to their guardians as was contemplated by the law. This having been done, what remained for the administrator with the will annexed, to do? Simply to sell the land and personal property, and apply and distribute the proceeds as directed by the will. The guardians would have received the amount necessary to support and educate their wards, from the hands of the administrator; and the further duties of making a proper

application of the amounts thus received, would have de-
volved upon the guardians, as trusts to be executed accord-
ing to the intentions of the testator, and in the manner
enjoined on them by law. I can perceive no necessity,
therefore, for the appointment of a trustee by a Court of
Chancery to execute any of the provisions contained in
this will. But no application has been made to a Court
of Chancery for the appointment of such a trustee, either to
sell the land, or to apply and disburse the proceeds after such
sale shall be made. No complaint has been made that the
estate has been squandered by the administrator, Gatton; or
that he and his securities are not fully able to account for
any deficiency which may possibly accrue, by reason of a
supposed delinquency. The heirs commence their action of
ejectment in the first instance against Hall, to recover pos-
session of the land of their ancestor sold to Hall by the admin-
istrator, when no land, by the will of their father, was ever
intended to have been distributed among them; and when too,
the presumption arises in the absence of proof on that sub-
ject, that they have already been supported and educated
out of the proceeds of the sale of that land to the man, they
now seek to eject from his possession.

It appears to me that if injustice has been done to these
children, and the estate of their ancestor has not been sold
and the proceeds distributed according to the provisions in
the will, that their relief is by a Court of Chancery, where
Gatton, Hall, and all persons interested could have been
made parties, and the intentions of the testator, if necessary,
carried into execution by a trustee to be appointed by such
Court, and not by action of ejectment. By this mode of
proceeding, the intentions of the testator in respect to the
manner of disposing of his estate will be defeated, and the
acts of the administrator annulled, although he is not a party
to the suit.

And what are to be the consequences of vacating the acts
of the administrator, and setting aside the deed to Hall in
this collateral way? Will Hall, in addition to the loss of the
purchase money, and interest upon it for ten years, be also sub-

ject to the payment of rents for his use and occupation of the land, for the time he may have occupied it since his purchase from the administrator? If so, his loss will, indeed, be ruinous. Or will he be allowed a just compensation for his improvements, after the rents and profits shall have been deducted? These are questions of no light import to a man in moderate circumstances, as may be the case with the plaintiff in error in this suit, and worthy of serious consideration; and, finally, if an administrator with the will annexed may perform certain duties and exercise certain powers under a will, and may not perform and exercise others, who is to determine upon the line which separates these powers? Where shall he commence to execute his duties, and where must he stop? It appears to me that a difficulty will be presented by these considerations, which will, in many cases, make it hazardous for the administrator to act; and still more so, for any person to purchase any of the real estate of the testator from him, until a Court of Chancery shall have first determined whether or not the administrator under the will has the power to dispose of it, as it might have been disposed of by the executor, if one had been appointed, or not.

As ample provision appears to me to have been made for such a contingency as has arisen in this case by our statute, I cannot perceive that either justice or equity will be promoted by annulling the acts of the administrator, and confiscating the rights of an innocent *bona fide* purchaser, for a full and valuable consideration, after the lapse of ten years, where no fraud is imputed to him, and where all the proceedings, for aught that appears in the record, seem to have been conducted according to the forms prescribed by law.

SCATES, J., said: I concur with Justice Young in the positions assumed by him. With due deference to the high character of the Court who made the decision referred to in 21 Wendell, I must be permitted say that I never could have given such an interpretation to the New York statute, and therefore, could not allow it to become a guide in determining the meaning of our own. One rule of interpretation not adverted to by the Court, is, to gather the true meaning

of the law makers, from the spirit of other acts *in pari materia*, as well as the individual act.   In England, with a view of sustaining a landed aristocracy, great restraints upon aliena- tion of land remain to this day.   In most of the States, and particularly here, all restraints are removed, and but one incumbrance upon it left, that of dower, which may also be removed by consent of the wife.   Its alienation is as free as that of personalty, and it has become a species of capital, and I might say an article of domestic commerce.   It may not only be mortgaged, but incumbered by judgment and sold on execution, and is liable for the payment of debts, after exhausting the personalty.   In these last particulars the laws of England have been wholly changed with us, and it becomes a fund in the hands of the administrator for the payment of debts.   Under these liberal and enlightened principles of polity for supplying our wants, paying our debts, and accomplishing our purposes in regard to our families, can there be any sound reason for adhering to an old techni- cality in regard to naked powers, and applying it to an administrator who could, without directions in the will, if necessary, sell for the payment of debts?   It does not appear by this record, whether there were debts or not.   If there were, he might, by petition to a Court of law, obtain an order to sell, and if not charged with the execution of this direction in the will, he might sell it for what it would bring, and so defeat the intention of the testator, by selling for less than eight dollars per acre, as directed in the will.   Again, as the administrator is not charged with the care, mainte- nance and education of the children, and the will directing the application of the proceeds of the sales to those objects, the children might not be able to compel him to do that with which he is not charged by the will, if it be true that he has no power to sell; so the Court of Chancery would have to appoint a trustee to execute the will, and he might be other and different person from the administrator.   Here would be the anomaly, then, of an administrator with the will annexed charged by law with the due execution of the will, and under bond to do so; and yet a trustee clothed with all and the only power to perform the duty.   This would be absurd.   I think

this is a power coupled with an interest which survives to an administrator for the benefit of the children; and that by our statute he is authorized to fulfil the directions of the testator. The idea of a personal trust, under such circumstances, being reposed in the executor, is not admissible, for he appointed none, and still, left his directions for a sale, knowing that an administrator would have to be appointed to accomplish them.

*Judgment affirmed.*